# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
November 24, 2025

Lyle W. Cayce
Clerk

No. 24-20457

Stephen Benavides,

*Plaintiff—Appellee*,

*versus*

Harris County, Texas,

*Defendant—Appellant*.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:21-CV-1289

Before Higginson, Willett, and Engelhardt, *Circuit Judges*.

Per Curiam:[*]

On December 26, 2019, at approximately 7:19 p.m., Deputy Jose Nunez of the Harris County Sheriff's Office responded to a 911 call reporting a suspected in-progress home invasion. The caller, Sandra Garibay, informed the dispatcher that she had locked herself and her young children in an upstairs bedroom. She likewise informed the dispatcher that she also had called her father, Stephen Benavides, who was en route. Arriving before the

---

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

police, Benavides parked his truck on the lawn near the front door of the house and ultimately determined that there actually was no intruder. Unfortunately, however, this information was not timely communicated to the in-transit, responding deputies. And shortly after arriving at Garibay's home, Deputy Nunez—still unaware of the changed circumstances—shot Benavides, who was unarmed, when the two men unexpectedly met at the house's front door.

Thereafter, Benavides sued Nunez, pursuant to 42 U.S.C. § 1983, alleging excessive force, and Harris County, pursuant to the Texas Tort Claims Act ("TTCA"), asserting vicarious liability for Nunez's alleged negligence. Contending that he had discharged his firearm accidentally, rather than purposely, Deputy Nunez sought summary judgment on grounds of qualified immunity. Harris County also sought summary judgment against Benavides, asserting state-law immunities, i.e., governmental immunity and official immunity.

Finding Nunez's intent to be a genuinely disputed material fact, the district court denied his motion in an eight-page "Memorandum Opinion and Order." Nunez sought interlocutory review but the panel, concluding it lacked jurisdiction, dismissed the appeal. *See Benavides v. Nunez*, 144 F.4th 751 (5th Cir. 2025).

On the same day that it denied Nunez's motion, the district court also rejected Harris County's request for dismissal, stating in a single-paragraph ruling:

> Pending before the Court is a motion for summary judgment filed by Defendant Harris County. (Dkt. 82). The Court finds a genuine issue of material fact precludes summary judgment in favor of Harris County. The motion is DENIED without prejudice to being reasserted at trial as a motion for judgment as a matter of law.

2

No. 24-20457

This appeal followed.

## I.

Federal appellate courts have jurisdiction over appeals from "final decisions" of the federal district courts. *See* 28 U.S.C. § 1291; *see also Backe v. LeBlanc*, 691 F.3d 645, 647 (5th Cir. 2012). "A final decision is one that 'ends the litigation on the merits and leaves nothing more for the court to do but execute the judgment.'" *Vantage Health Plan, Inc. v. Willis-Knighton Med. Ctr.*, 913 F.3d 443, 448 (5th Cir. 2019) (quoting *Dig. Equip. Corp. v. Desktop Direct, Inc.*, 511 U.S. 863, 867 (1994)). The "collateral order doctrine" also permits immediate appellate review of certain interlocutory orders. *See BancPass, Inc. v. Highway Toll Admin., L.L.C.*, 863 F.3d 391, 397 (5th Cir. 2017) ("Under the collateral order doctrine, the Supreme Court has read the language of § 1291 to permit interlocutory appeals from a small category of decisions that, although they do not end the litigation, must nonetheless be considered 'final.'" (quoting *Swint v. Chambers Cnty. Comm'n*, 514 U.S. 35, 42 (1995) (citation modified))).

"Interlocutory appeal is the exception, [however] not the rule." *Cantu v. Rocha*, 77 F.3d 795, 802 (5th Cir. 1996). "To qualify as a collateral order, an order must (1) conclusively determine the disputed question, (2) resolve an important issue completely separate from the merits of the action, and (3) be effectively unreviewable on appeal from a final judgment." *Vantage Health Plan,* 913 F.3d at 448 (quoting *Henry v. Lake Charles Am. Press, L.L.C.*, 566 F.3d 164, 171 (5th Cir. 2009) (citation modified)).

Because an order denying a motion for summary judgment does not end the litigation, it is not a final decision for purposes of § 1291. But, under the collateral order doctrine, interlocutory "[o]rders premised on the denial of official immunity under Texas state law are appealable in federal court to the same extent as district court orders premised on the denial of federal law

immunity." *Heidi Grp., Inc. v. Texas Health & Hum. Servs. Comm'n*, 138 F.4th 920, 928 (5th Cir. 2025) (quoting *Ramirez v. Martinez*, 716 F.3d 369, 373 (5th Cir. 2013) (brackets omitted)); *Wooten v. Roach*, 964 F.3d 395, 404–05 (5th Cir. 2020); *Linbrugger v. Abercia*, 363 F.3d 537, 544 (5th Cir. 2004). The same is true for interlocutory orders denying dispositive motions asserting governmental immunity under Texas law. *Morgan v. Plano Indep. Sch. Dist.*, 724 F.3d 579, 582 (5th Cir. 2013).

Accordingly, in cases where the district court has determined that a genuine dispute of material fact exists, we have appellate "jurisdiction to 'review the materiality of any factual disputes, but not their genuineness.'" *Escobar v. Montee*, 895 F.3d 387, 393 (5th Cir. 2018) (quoting *Hogan v. Cunningham*, 722 F.3d 725, 730–31 (5th Cir. 2013)); *Ramirez v. Escajeda*, 44 F.4th 287, 292 (5th Cir. 2022) (reiterating that court of appeals cannot review determination that a genuine factual dispute exists but can assess whether the factual dispute is material to the underlying claim).[1] That is to say, we are permitted to consider "only whether the district court erred in assessing the legal significance of the conduct that [it] deemed sufficiently

---

[1] *See Johnson v. Jones*, 515 U.S. 304, 319–20 (1995) ("[A] defendant, entitled to invoke a qualified immunity defense, may not appeal a district court's summary judgment order insofar as that order determines whether or not the pretrial record sets forth a 'genuine' issue of fact for trial."); *Benavides*, 144 F.4th at 755 ("We do not have jurisdiction to consider interlocutory appeals of the denial of qualified immunity that challenge only issues of fact." (citing *Ramirez*, 44 F.4th at 291 and *Michalik v. Hermann*, 422 F.3d 252, 257–63 (5th Cir. 2005))); *see also Janas v. Doss*, 102 F.3d 550, 1996 WL 670343, at *1 (5th Cir. 1996) (unpub.) ("Since the district court determined questions of fact precluded summary judgment, we lack jurisdiction over the denial of summary judgment on Doss' official immunity defense."); *Tamez v. City of San Marcos*, 62 F.3d 123, 125 (5th Cir. 1995) (reasoning that *Johnson* precluded interlocutory appellate review because summary judgment motion asserting official immunity was denied on the basis of genuine issues of material fact).

supported for purposes of summary judgment." *Ramirez*, 44 F.4th at 291 (quoting *Keller v. Fleming*, 952 F.3d 216, 220 (5th Cir. 2020)). And in making that assessment, "[w]e accept the [plaintiff's] version of the facts as true." *Id.* (quoting *Juarez v. Aguilar*, 666 F.3d 325, 332 (5th Cir. 2011)).

## II.

Benavides' claim against Harris County seeks relief under the Texas Tort Claims Act, which waives governmental immunity for certain negligent conduct, including personal injuries caused by the negligent use of tangible property, *unless* the claim arises out of an intentional tort.[2] Stated differently, there is no waiver of governmental immunity for a claim that arises out of an "intentional tort." *See City of Watauga v. Gordon*, 434 S.W.3d 586, 589 (Tex. 2014); Tex. Civ. Prac. & Rem. Code § 101.021(2) ("A governmental unit in the state *is* liable for . . . personal injury and death so caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law." (emphasis added)); *id.* § 101.057(2) ("This chapter does *not* apply to a claim . . . arising out of assault, battery, false imprisonment, or any other intentional tort[.]" (emphasis added)).

---

[2] "Sovereign immunity and its counterpart, governmental immunity, exist to protect the State and its political subdivisions from lawsuits and liability for money damages." *Mission Consol. Indep. Sch. Dist. v. Garcia*, 253 S.W.3d 653, 655 (Tex. 2008) (citing *Reata Constr. Corp. v. City of Dallas*, 197 S.W.3d 371, 374 (Tex. 2006)). "Sovereign immunity protects the State, state agencies, and their officers, while governmental immunity protects subdivisions of the State, including municipalities and school districts." *Garcia*, 253 S.W.3d at 655 n. 2  (citing *Harris Cnty. v. Sykes*, 136 S.W.3d 635, 638 (Tex. 2004)). "[B]oth types of immunity afford the same degree of protection and both levels of government are subject to the Tort Claims Act." *Id.* (citing Tex. Civ. Prac. & Rem. Code § 101.001(3) and *Sykes*, 136 S.W.3d at 638). "In Texas, governmental immunity has two components: immunity from liability, which bars enforcement of a judgment against a governmental entity, and immunity from suit, which bars suit against the entity altogether." *Tooke v. City of Mexia,* 197 S.W.3d 325, 332 (Tex. 2006).

No. 24-20457

Harris County maintains that the district court erred in its application of the TTCA's limited waiver of governmental immunity, reasoning that Benavides' claim, though framed in negligence, still falls within the waiver exception for claims arising out of "assault, battery . . . or any other intentional tort." Alternatively, Harris County argues that Deputy Nunez's alleged entitlement to "official immunity"—an affirmative defense that shields public employees from personal liability for suits arising from the employee's good faith performance of discretionary duties within the scope of his employment—likewise protects the county, as Nunez's employer, from respondeat superior liability.[3]

## III.

Our review of the district court's denial of Harris County's motion for summary judgment is somewhat hindered by the written ruling's lack of specificity. The order does not provide a detailed explanation of the district

---

[3] "When official immunity shields a governmental employee from liability, sovereign immunity shields the governmental employer from vicarious liability." *Univ. of Houston v. Clark,* 38 S.W.3d 578, 580 (Tex. 2000); *DeWitt v. Harris Cnty.*, 904 S.W.2d 650, 654 (Tex. 1995) ("[T]he county is not liable under section 101.021(2) [of the TTCA] for the negligence of its employee when the employee has no liability because of official immunity. "). "Official immunity is an affirmative defense that shields governmental employees from personal liability so that they are encouraged to vigorously perform their official duties." *Telthorster v. Tennell*, 92 S.W.3d 457, 460–61 (Tex. 2002) (citing *Kassen v. Hatley*, 887 S.W.2d 4, 8 (Tex. 1994)). "A government employees is entitled to official immunity for (1) the performance of discretionary duties (2) that are within the scope of the employee's authority, (3) provided that the employee acts in good faith." *Id.* at 461 (citing *City of Lancaster v. Chambers*, 883 S.W.2d 650, 653 (Tex. 1994)).

court's rationale. Indeed, the pertinent language simply states: "The Court finds a genuine issue of material fact precludes summary judgment in favor of Harris County." Fortunately, however, the district court's other rulings provide sufficient enlightenment.[4]

Addressing Nunez's summary-judgment motion, the district court's September 30, 2024 "Memorandum Opinion and Order" concludes:

> There is a genuine issue of material fact about whether Nunez shot Benavides intentionally or accidentally. This fact will determine whether Nunez violated the Fourth Amendment and ultimately whether he is entitled to qualified immunity. Therefore, summary judgment cannot be granted as a matter of law.

*Benavides v. Harris Cnty.*, No. 4:21-CV-1289, 2024 WL 4354111, at *4 (S.D. Tex. Sept. 30, 2024). Explaining those conclusions, the district court reasoned that a jury, upon evaluating and weighing all of the evidence, including body camera footage showing Nunez had both hands on his firearm when

---

[4] "Ideally, [a] district court's order denying summary judgment based on qualified immunity explains what facts the plaintiff may be able to prove at trial, i.e., what particular facts the court assumed in denying summary judgment urged on the basis of qualified immunity." *Thompson v. Upshur Cnty.*, 245 F.3d 447, 456 (5th Cir. 2001). Doing so "facilitates appellate review by allowing this Court to focus on the aforementioned purely legal issues." *Id.* When a district court does not identify the factual disputes that it deems genuine, but instead simply reasons that genuine issues of material fact exist, "[w]e can either scour the record and determine what facts the plaintiff may be able to prove at trial and proceed to resolve the legal issues, or remand so that the trial court can clarify the order." *Id*; *see also Poole v. City of Shreveport*, 13 F.4th 420, 424 (5th Cir. 2021) (noting court of appeals' authority to "scour the record and determine what facts the plaintiff may be able to prove at trial" where "district court only issued a conclusory ruling that 'disputed issues of material fact' exist" (citation modified)); *Martinez v. Tex. Dep't of Crim. Just.*, 300 F.3d 567, 576 (5th Cir. 2002) ("Because the district court did not identify which factual issues it considered genuine, one option is to analyze the record to determine those issues of fact the court likely considered genuine.").

it fired, could conclude that the facts support either party's version of events. Specifically, a fact finder could "reasonably view the footage as showing that Nunez was deliberately aiming his weapon, intending to shoot whoever was behind the door," i.e., the shooting was intentional. But the shooting also could be viewed as an accidental discharge—having unintentionally occurred as Nunez switched the gun from one hand to the other.

Because Deputy Nunez's appeal of that ruling challenged the genuineness of the factual dispute found by the district court, rather than its materiality, we dismissed for lack of jurisdiction. *See Benavides*, 144 F.4th at 756. Seeking to avoid the same disposition here, Harris County argues that particular factual dispute—whether the shooting is deemed "accidental" or "intentional"—is immaterial to the issue presented in this appeal, i.e., whether Benavides' claim falls within the TTCA's "intentional tort" provision.

In support of this argument, Harris County cites our unpublished decision in *Saenz v. City of El Paso* for the proposition that: "[I]f a plaintiff pleads facts which amount to an intentional tort, no matter if the claim is framed as negligence, the claim generally is for an intentional tort and is barred by the TTCA." *Saenz v. City of El Paso*, 637 F. App'x 828, 830 (5th Cir. 2016) (unpub.) (quoting *Harris Cnty. v. Cabazos*, 177 S.W.3d 105, 111 (Tex.App.–Houston [1st Dist.] 2005)). And, as Harris County stresses, *Saenz* additionally instructs: "Nor can [a plaintiff] avoid this bar by pleading negligence alternatively. A plaintiff may not maintain a negligence claim under the TTCA where the claim is based on 'the same conduct' as the intentional tort claim." *Id*. at 831 (citing *Tex. Dep't of Pub. Safety v. Petta*, 44 S.W.3d 575, 580 (Tex. 2001)).

No. 24-20457

In *Saenz*, we concluded that "[the plaintiff's] TTCA claim against the City arises out of an intentional tort" and thus was properly dismissed, reasoning: "In this case, [the negligence claim] alleges no distinct facts aside from those that formed the basis of the excessive force claim. Because [the] negligence claim relies on the same conduct as the excessive force allegations, it falls outside the TTCA's 'limited waiver of sovereign immunity.'" *Saenz*, 637 F. App'x at 831 (quoting *Goodman v. Harris Cnty.*, 571 F.3d 388, 394 (5th Cir. 2009)).

But *Saenz* is inapposite.[5] In that case, the plaintiff's complaint alleged that her son, Daniel Saenz, who was in police custody, "was handcuffed, unarmed, and restrained" when an El Paso police officer shot and killed him. *Id.* at 829. Based on that alleged conduct, we reasoned:

> The gravamen of [the plaintiff's] claim is that Officer Flores used excessive force in wrongfully shooting [Daniel] Saenz. Such a claim sounds in intentional tort." *See Kingsley v. Hendrickson*, 576 U.S. 389, 400 (2015) ("[W]e have limited liability for excessive force to situations in which the use of force was

---

[5] The same is true of the state court cases, cited in *Saenz,* wherein negligence claims (that were premised on intentional acts) were excluded from the TTCA's limited waiver of sovereign immunity. In *Cabazos*, "despite [the deputy's] alleged negligence in shooting [the plaintiff], the pleadings and other evidence pertinent to determining jurisdiction demonstrate[d] that [the deputy] intended to shoot [the plaintiff]." *Cabazos*, 177 S.W.3d at 112; *id.* at 113 (emphasizing that, on the plaintiff's recounting, the deputy pulled his pistol as he approached the plaintiff's vehicle, and aimed it before shooting). Further, unlike Benavides, the *Cabazos* plaintiff "[did] not allege an accidental shooting, such as the inadvertent discharge of the pistol." *Id.* at 113. Also unlike the instant case, "the pleading and evidence [did not] indicate that the shooting . . . was anything but intentional." *Id.*

And in *Petta*, the plaintiff's "negligence" allegations did not obviate the fact that the underlying conduct—officers hitting car windows, using a police cruiser to block in the plaintiff's car, and aiming and firing a gun at the plaintiff's tires—was "clearly intentional" and "fit squarely within section 101.057's exclusion of claims arising out of assault, battery, and false imprisonment." *Petta*, 44 S.W.3d at 580.

the result of an intentional and knowing act. . . .”). Saenz's claim is thus a claim for which sovereign immunity has not been waived. *City of Watauga*, 434 S.W.3d at 589 (“[T]o be viable, the claim cannot arise out of an intentional tort.”).

* * *

[And,] [e]ven assuming the shooting was accidental, the complaint alleges underlying intentional force: the use of force to restrain Saenz. Under *City of Watauga*, this underlying intentional conduct forecloses a TTCA claim.

*Id.* at 830–31 and n.1.[6]

Unlike the plaintiff's negligence claim in *Saenz*, Benavides' alternatively pleaded negligence claim (against Harris County) is not based on the same facts/conduct as Benavides' excessive force claim asserted under § 1983 (against Deputy Nunez). Though both claims assert that Nunez shot Benavides, which is undisputed, that is where their sameness ends. In fact, the claims arise from and are based on materially different

---

[6] The district court's opinion reports that the plaintiff (Saenz's mother) had alleged:

> [U]pon his detention at an unspecified jail, Saenz was placed in handcuffs that featured “a longer than usual chain between the two metal wrist clamps,” and that he was “dragged” by those cuffs “cruelly, maliciously and with deliberate indifference to his medical attention.” Second Am. Compl. 5–6. Plaintiff also alleges that at some point, Saenz was “tased several times.” *Id.* at 5.

> Sometime later, Saenz was taken to an area “of the jail [where] numerous law enforcement personnel [were] available to restrain and control [Saenz] without the use of deadly force.” *Id.* at 6. There, while Saenz was “on his stomach” and “in handcuffs” with “[h]is hands . . . behind his back,” Plaintiff alleges that Defendant Flores “pulled out his loaded pistol . . . [and] shot and killed Daniel Saenz.” *Id.*

*Saenz v. City of El Paso*, No. 14-CV-244, 2015 WL 12965290, at *1 (W.D. Tex. Feb. 23, 2015).

conduct. The excessive force claim alleges *intentional* conduct (Nunez's purposeful aiming and firing his gun) undertaken with the *intention* of effecting bodily contact on the person of another (Benavides). In stark contrast, the negligence claim is premised on *unintentional* conduct (Nunez's *accidentally* discharging his gun) yielding *unintentional* contact with the person of another (Benavides).[7]

In other words, Benavides is not attempting to avoid the bar of governmental immunity by means of artful pleading, i.e., mischaracterizing intentional conduct as an act of negligence. Rather, Benavides' negligence claim, pleaded in the alternative,[8] simply reflects *Benavides'* understandable uncertainty (under the circumstances) regarding *Nunez*'s actual state of mind at the time his gun discharged. Nor do Benavides' alternatively pleaded claims seek double or inconsistent recovery. As explained in his brief: "Although liability could not be predicated on both intentional and unintentional acts, the evidence supports the ability to present both at trial . . . [and] [d]epending on the facts accepted and found as true by a jury, liability could be predicated upon either claim." *See* Appellee Br., ECF 54, p. 26.[9]

———————————

[7] Nunez maintains that he accidentally discharged his firearm while transitioning the weapon from one hand to another.

[8] *See* Fed. R. Civ. P. 8(a)(3) ("A pleading that states a claim for relief must contain[] . . . a demand for the relief sought, which may include relief in the alternative or different types of relief.").

[9] The record seemingly reveals that the district court reached the same conclusion. As set forth in the August 31, 2022 "Hearing Minutes," the district court allowed Benavides to replead the alternative claims—despite the district court's previous dismissal (based on the TTCA's intentional tort provision) of the alternatively pleaded negligence claim—when new discovery eventually revealed Nunez's assertion that he had *not* purposefully fired his weapon, or intended to shoot anyone, on December 26, 2019. *See* March

No. 24-20457

The foregoing analysis reveals, contrary to Harris County's assertions otherwise, that the genuine factual dispute identified by the district court—regarding the intentional versus accidental nature of Nunez's conduct, i.e., discharging his firearm—*is* material to Benavides' claims and Harris County's immunity defenses. Specifically, if it is determined that Nunez intentionally aimed and discharged his gun at Benavides, the TTCA's intentional tort provision would preclude any imposition of vicarious liability on Harris County. In short, Harris County's governmental immunity would not be waived and would entitle it to dismissal. In contrast, if it is determined that Nunez did *not* intend to discharge his firearm, and did so purely by accident, Harris County's immunity from liability will be contingent on Nunez's entitlement to official immunity—viz., whether Nunez is shielded from personal liability for the consequences of his conduct.

Notably, the district court's order rejected both types of immunity that were urged in support of Harris County's motion for summary judgment—governmental immunity *and* official immunity—based upon its finding that a genuine issue of material fact precluded summary judgment. And, though Harris County also asks, in the alternative, that we reverse the district court's official-immunity ruling, we again conclude that we cannot.

--------

25, 2022 Memorandum Opinion and Order at 13–15 (dismissing negligence claim); Benavides' August 14, 2022 Request for Pre-motion Conference and/or to Amend); Harris County's August 16, 2022 Response; August 31, 2022 "Hearing Minutes" (granting Benavides leave to amend complaint to address issue stated in pre-motion conference letter); September 6, 2022 Second Am. Compl.; *see also* Nunez's and Longshore's December 2019 Sworn Statements; April–May 2021 Sworn Statement and Sheriff's Office Investigation of Complaint of Reckless Discharge of Firearm.

No. 24-20457

As with Harris County's governmental immunity defense, we lack appellate jurisdiction to review the district court's determination that a genuine factual dispute exists regarding Nunez's official immunity. Nor are we convinced, on the showing made, that Harris County's interlocutory appeal presents a dispositive legal issue that we can decide without exceeding the limited confines of our appellate jurisdiction. Accordingly, for the foregoing reasons, we DISMISS this appeal for lack of jurisdiction.[10]

_____

[10] Given our resolution of this appeal, Plaintiff-Appellee Benavides' pending motion to dismiss the appeal for lack of jurisdiction, carried with the case, is DENIED as moot.