# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

March 16, 2023

Lyle W. Cayce
Clerk

No. 21-20553

DENISE FISHER,

*Plaintiff—Appellee*,

*versus*

JODI M. MOORE; AMNA BILAL; REBECCA KAMINSKI; JAMES BRIAN SHILLINGBURG; MICHAEL YELVINGTON,

*Defendants—Appellants*.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:21-CV-937

Before RICHMAN, *Chief Judge*, and WIENER and WILLETT, *Circuit Judges*.

DON R. WILLETT, *Circuit Judge*:

A disabled public-school student was sexually assaulted by another student with known violent tendencies. Despite knowing of this attack, the victim's teachers let both her and her aggressor wander the school unsupervised, and she was again assaulted by the very same student. The victim's mother sued various school officials under 42 U.S.C. § 1983, alleging liability under the so-called "state-created danger" doctrine, an

No. 21-20553

exception to the general rule that government has no duty under the Due Process Clause to protect people from privately inflicted harms. The school officials sought dismissal on qualified-immunity grounds, arguing that the state-created danger doctrine was not clearly established in this circuit when the underlying events occurred. The district court denied their motion.

But the school officials are right. This circuit has never adopted a state-created danger exception to the sweeping "no duty to protect" rule. And a *never*-established right cannot be a *clearly* established one. Nor do we think it prudent to adopt a never-recognized theory of § 1983 liability in the absence of rigorous briefing that grapples painstakingly with how such a cause of action, however widely accepted in other circuits, works in terms of its practical contours and application, details on which our sister circuits disagree. Also, beyond the lack of thorough briefing, we are reluctant to expand substantive due process doctrine given the Supreme Court's recent forceful pronouncements signaling unease with implied rights not deeply rooted in our Nation's history and tradition. This is especially so here, as our unbroken precedent counsels us to rule instead on a narrower ground. Accordingly, we REVERSE and REMAND with instructions to dismiss the § 1983 claim.

I

A

Denise Fisher, as next friend of M.F., a minor, alleged the following facts in her complaint:

M.F. was a student at James Bowie Middle School (JBMS) in the Fort Bend Independent School District (FBISD). Denise Fisher is her mother. Jodi Moore and Amna Bilal were M.F.'s teachers at JBMS. James Shillingburg and Michael Yelvington were the principal and vice principal,

No. 21-20553

respectively. Rebecca Kaminski was the manager of FBISD's special-needs program.

M.F. suffers from several mental and physical disabilities. When the relevant events occurred in the fall of 2019, M.F. was around thirteen years old but had the cognitive ability of a four- or five-year-old. Her conditions qualify her for services under the Individuals with Disabilities Education Act.[1] In accordance with IDEA, M.F.'s attendance at JBMS is governed by an Individualized Education Program (IEP). An IEP is a "comprehensive plan prepared by a child's . . . teachers, school officials, and the child's parents" and "the means by which special education and related services are 'tailored to the unique needs' of a particular child."[2] M.F.'s IEP noted that she sometimes "left her classroom without the teacher's permission" and therefore "need[ed] assistance transitioning throughout the school day." Accordingly, the IEP provided, among other things, that, "[f]or [M.F.'s] safety, escorting her during transitions within the school building will be required." In fact, M.F. was to be "escorted at all times in middle school."

R.R. is another minor student at JBMS. He had a history of severe behavior problems, including violence against other students and teachers, which was known to JBMS staff. Among his many infractions were "[h]itting students in the head with rocks"; "[p]oking a student in the eye"; "[h]itting other students with a belt"; "[t]hreatening to burn a teacher to death"; and "[b]iting," "[k]icking[,] and spitting on students." According to the complaint, JBMS administrators knew that R.R. posed an especially serious risk to female students, whom he frequently taunted with obscene

---

[1] *See* 20 U.S.C. § 1414(d).

[2] *Endrew F. ex rel. Joseph F. v. Douglas Cnty. Sch. Dist. RE-1*, 137 S. Ct. 988, 994 (2017) (citations omitted).

remarks. Additionally, R.R. once told school staff that he "was going to be a rapist when he grows up." R.R.'s sexual misconduct was not limited to verbal abuse. He repeatedly entered the girls' restroom at school and on one occasion, groped a female classmate. Another incident involved R.R. pulling his pants down to expose his genitals and then urinating on the wall. R.R. was also subject to an IEP requiring him to be escorted and supervised at all times—not for his safety, but for that of the other students.

On September 4, 2019, notwithstanding the IEP requirements, M.F. and R.R. were "both allowed to wander . . . out of their respective classes" without supervision. R.R. and M.F. "ended up in the boys' restroom, where R.R. forced M.F. to perform oral sex on him." School employees learned of the incident when they found R.R. and M.F. coming out of the bathroom and questioned both students about what they were doing there. M.F. conveyed to the staff members that she had been sexually assaulted. Upon investigating her claim, FBISD confirmed from the security camera footage that both R.R. and M.F. were in the boys' restroom at the time of the assault. As a result, the complaint alleges, FBISD and the other defendants were on notice that R.R. posed a specific threat to M.F.

Then it happened again.

On November 12, 2019, Jodi Moore and Amna Bilal once again "permitted M.F. to leave her classroom" and navigate the school hallways without supervision in violation of M.F.'s IEP. At the same time, "Moore and Bilal allowed R.R. to leave his classroom" and wander the hallways by himself in violation of his IEP. M.F. entered the girls' bathroom, and R.R. followed her inside. R.R. climbed under the stall M.F. was using and sexually assaulted her again. After an investigation, FBISD confirmed that R.R. had sexually assaulted M.F. in the girls' restroom. The Texas Education Agency

No. 21-20553

also investigated the November 12, 2019 assault and determined that FBISD had violated both M.F.'s and R.R.'s IEPs.

B

In March 2021, Fisher filed suit on M.F.'s behalf in federal district court against FBISD and the individual school-official defendants, Jodi Moore, Amna Bilal, James Brian Shillingburg, Michael Yelvington, and Rebecca Kaminski. The complaint asserted (1) a claim against all defendants under 42 U.S.C. § 1983, on the theory that they had "created or increased the danger to M.F." and "acted with deliberate indifference" in violation of the Due Process Clause of the Fourteenth Amendment; and (2) a claim against FBISD under 20 U.S.C. § 1681, better known as Title IX.

Relevant to this appeal, the individual defendants moved to dismiss the § 1983 claim under Federal Rule of Civil Procedure 12(b)(6), contending they were entitled to qualified immunity. The district court denied the motion in a one-page order, stating only that "Defendants ha[d] not raised grounds sufficient to justify the partial dismissal requested." The individual defendants then filed this interlocutory appeal.

II

We have jurisdiction over this interlocutory appeal from the district court's denial of qualified immunity, and our review is de novo.[3] "On appeal from a motion to dismiss, this court accepts all well-pleaded facts as true and views them in the light most favorable to the plaintiff."[4]

---

[3] *See Wilkerson v. Stalder*, 329 F.3d 431, 434 (5th Cir. 2003).

[4] *De La Paz v. Coy*, 786 F.3d 367, 371 (5th Cir. 2015).

5

No. 21-20553

### III

Appellants insist they are entitled to qualified immunity because the state-created danger theory of liability was not clearly established in this circuit when the underlying events occurred. Bound by our precedent, we agree.

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"[5] "Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct."[6]

Appellants contend that as of November 2019, when the events took place, it was not clearly established that plaintiffs have a right to be free from state-created dangers. Appellants are correct.

The Due Process Clause of the Fourteenth Amendment provides that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law."[7] "The Due Process Clause . . . does not, as a general matter, require the government to protect its citizens from the acts of private actors."[8] We have recognized just one exception to this general rule: "when [a] 'special relationship' between the individual and the state imposes upon

---

[5] *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

[6] *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (quoting *Harlow*, 457 U.S. at 818).

[7] U.S. Const. amend. XIV, § 1.

[8] *McKinney v. Irving Indep. Sch. Dist.*, 309 F.3d 308, 312 (5th Cir. 2002) (citing *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 195 (1989)).

No. 21-20553

the state a constitutional duty to protect that individual from known threats of harm by private actors."[9] However, "a number of our sister circuits have adopted a 'state-created danger' exception to the general rule, under which a state actor who knowingly places a citizen in danger may be accountable for the foreseeable injuries that result."[10] M.F. brings her due process claim against Appellants only under the second exception, the state-created danger theory.

The problem for M.F. is that "the Fifth Circuit has never recognized th[e] 'state-created-danger' exception."[11] In our published, and thus binding, caselaw, "[w]e have repeatedly declined to recognize the state-created danger doctrine."[12] For this reason, M.F. "ha[s] not demonstrated a clearly established substantive due process right on the facts [she] allege[s]."[13] The district court thus erred in denying qualified immunity to Appellants.

---

[9] *Id.* at 313.

[10] *Id.*

[11] *Keller v. Fleming*, 952 F.3d 216, 227 (5th Cir. 2020).

[12] *Joiner v. United States*, 955 F.3d 399, 407 (5th Cir. 2020); *see also*, *e.g.*, *Shumpert v. City of Tupelo*, 905 F.3d 310, 324 n.60 (5th Cir. 2018) ("[T]he theory of state-created danger is not clearly established law." (listing cases)); *Kovacic v. Villarreal*, 628 F.3d 209, 214 (5th Cir. 2010) ("The Fifth Circuit has not adopted the 'state-created danger' theory of liability."); *Bustos v. Martini Club Inc.*, 599 F.3d 458, 466 (5th Cir. 2010) ("But this circuit has not adopted the state-created danger theory."); *Rios v. City of Del Rio*, 444 F.3d 417, 422 (5th Cir. 2006) ("[N]either the Supreme Court nor this court has ever either adopted the state-created danger theory or sustained a recovery on the basis thereof."); *Beltran v. City of El Paso*, 367 F.3d 299, 307 (5th Cir. 2004) ("This court has consistently refused to recognize a 'state-created danger' theory of § 1983 liability even where the question of the theory's viability has been squarely presented.").

[13] *Keller*, 952 F.3d at 227.

No. 21-20553

Even though we repeat today that the state-created danger doctrine is not clearly established in our circuit, to our knowledge we have not categorically *ruled out* the doctrine either; we have merely declined to adopt this particular theory of liability. To be sure, we have suggested what elements any such theory would include—should we ever adopt it, of course. For example, on one occasion, we indicated that a state-created danger theory would require "a plaintiff [to] show [1] the defendants used their authority to create a dangerous environment for the plaintiff and [2] that the defendants acted with deliberate indifference to the plight of the plaintiff."[14] We also stated that the defendant "'must have used their authority to create an opportunity that would not otherwise have existed for the third party's crime to occur.'"[15] Nonetheless, as we have held time and again, the right to be free from state-created danger is not clearly established in this circuit.[16]

We acknowledge that, as of November 2019, a majority of our sister circuits had adopted the state-created danger theory of liability in one form or another.[17] And, as M.F. points out, sometimes a "robust 'consensus of persuasive authority'" may suffice to clearly establish a constitutional

---

[14] *Doe ex rel. Magee v. Covington Cnty. Sch. Dist. ex rel. Keys*, 675 F.3d 849, 865 (5th Cir. 2012) (en banc) (quoting *Scanlan v. Tex. A&M Univ.*, 343 F.3d 533, 537–38 (5th Cir. 2003) (alterations in original)).

[15] *Id.* (quoting *Piotrowski v. City of Houston*, 237 F.3d 567, 585 (5th Cir. 2001)); *accord Estate of Lance v. Lewisville Indep. Sch. Dist.*, 743 F.3d 982, 1002 (5th Cir. 2014).

[16] *See, e.g.*, *Keller*, 952 F.3d at 227.

[17] *See Butera v. District of Columbia*, 235 F.3d 637, 651 (D.C. Cir. 2001); *Okin v. Vill. of Cornwall-On-Hudson Police Dep't*, 577 F.3d 415, 428 (2d Cir. 2009); *Kneipp v. Tedder*, 95 F.3d 1199, 1211 (3d Cir. 1996); *Doe v. Rosa*, 795 F.3d 429, 438–39 (4th Cir. 2015); *Kallstrom v. City of Columbus*, 136 F.3d 1055, 1066–67 (6th Cir. 1998); *King v. E. St. Louis Sch. Dist. 189*, 496 F.3d 812, 817 (7th Cir. 2007); *Carlton v. Cleburne Cnty.*, 93 F.3d 505, 508 (8th Cir. 1996); *Wood v. Ostrander*, 879 F.2d 583, 589–90 (9th Cir. 1989); *Uhlrig v. Harder*, 64 F.3d 567, 572 (10th Cir. 1995).

No. 21-20553

right.[18] But even putting aside our binding precedent that the doctrine is not clearly established in our circuit, our cases foreclose this specific line of reasoning as well. As we have held, "the mere fact that a large number of courts had recognized the existence of a right to be free from state-created danger in some circumstances . . . is insufficient to clearly establish" the theory of liability in our circuit.[19] "We reasoned that, despite widespread acceptance of the [state-created danger] doctrine [in other circuits], the circuits were not unanimous in [the doctrine's] 'contours' or its application."[20] We therefore reject M.F.'s argument that out-of-circuit precedent clearly established her substantive due process right to be free from state-created danger.[21]

Finally, M.F. suggests that "[t]his is the case the Court has been waiting for," and she invites us to—finally—adopt the state-created danger theory of § 1983 liability. We decline to do so.[22]

First, M.F. has not briefed the issue or explained how the doctrine would work in this case. She asserts only that her appeal "presents the right set of facts which, if believed, would trigger the application of the state-created danger theory." We think it "especially unwise" to fashion a new cause of action without the benefit of rigorous briefing.[23] We are particularly hesitant to expand the substantive due process doctrine under these

---

[18] *See Morgan v. Swanson*, 659 F.3d 359, 371–72 (5th Cir. 2011) (quoting *al-Kidd*, 563 U.S. at 742).

[19] *McClendon v. City of Columbia*, 305 F.3d 314, 330 (5th Cir. 2002).

[20] *Morrow v. Meachum*, 917 F.3d 870, 879 (5th Cir. 2019).

[21] *See McClendon*, 305 F.3d at 330.

[22] *See Pearson*, 555 U.S. at 236 (federal courts may choose which of the two prongs of qualified-immunity analysis to address first).

[23] *Lookingbill v. Cockrell*, 293 F.3d 256, 263 (5th Cir. 2002).

No. 21-20553

circumstances—not merely because we have "repeatedly" declined to do so on this exact issue,[24] but also because the Supreme Court has expressed a strong reluctance to do so more generally in this area of constitutional law.[25] When adopting the state-created danger doctrine, our sister circuits tend to reason along the lines of (1) the Supreme Court left open the question in *DeShaney*,[26] and (2) other courts have adopted the doctrine.[27] More recently, however, the Court has reiterated—forcefully—that rights protected by substantive due process "must be 'deeply rooted in this Nation's history and tradition' and 'implicit in the concept of ordered liberty.'"[28] Without briefing on how the state-created danger doctrine meets the reinvigorated test, we are content to leave the question of adopting the doctrine for another day.

Second, in light of caselaw from some of our sister circuits which *have* adopted the doctrine, we have some doubts as to whether the facts alleged in the complaint here state a plausible claim against school officials for student-

---

[24] *Estate of Lance*, 743 F.3d at 1002 (listing cases).

[25] *E.g.*, *Dobbs v. Jackson Women's Health Org.*, 142 S. Ct. 2228, 2247–48 (2022) ("As the Court cautioned in *Glucksberg*, '[w]e must . . . exercise the utmost care whenever we are asked to break new ground in this field, lest the liberty protected by the Due Process Clause be subtly transformed into the policy preferences of [judges].'" (quoting *Washington v. Glucksberg*, 521 U.S. 702, 720 (1997))); *Collins v. Harker Heights*, 503 U.S. 115, 125 (2009) ("As a general matter, the Court has always been reluctant to expand the concept of substantive due process because guideposts for responsible decisionmaking in this unchart[ed] area are scarce and open-ended.").

[26] 489 U.S. 189 (1989).

[27] *E.g.*, *Irish v. Fowler*, 979 F.3d 65, 73–74 (1st Cir. 2020); *see also, e.g.*, *Kneipp*, 95 F.3d at 1205 ("In *DeShaney*, the Supreme Court left open the possibility" of a state-created danger claim, and "[s]everal of our sister courts of appeals have cited this comment by the Court as support for utilizing a state-created danger theory to establish a constitutional claim under 42 U.S.C. § 1983.").

[28] *Dobbs*, 142 S. Ct. at 2242 (quoting *Glucksberg*, 521 U.S. at 721).

No. 21-20553

on-student violence.[29] Ordinarily, we would expect a party encouraging us to adopt a new cause of action to distinguish adverse authorities. Given these uncertainties and the parties' decision not to brief the subject, "[w]e decline to use this . . . opportunity to adopt the state-created danger theory in this case because the allegations would not support such a theory."[30]

Our holding today should not be misunderstood to say M.F.—or any future plaintiff—lacks any federal redress whatsoever. To the contrary, we have recognized that Title IX provides a cause of action for "student-on-student harassment" under certain circumstances.[31] We observe that M.F. asserted a Title IX claim in her complaint, and that proceedings on that claim have been stayed pending this interlocutory appeal. We express no view on the merits of that claim on remand and mention it here only to support our conclusion that expanding substantive due process in this case would not be appropriate in light of our settled precedent.

IV

The facts giving rise to this lawsuit are unquestionably horrific. And Title IX may well provide M.F. a remedy. But § 1983 does not, as the

---

[29] *See, e.g.*, *Morgan v. Town of Lexington*, 823 F.3d 737, 744 (1st Cir. 2016) ("An alleged failure of the school to be effective in stopping bullying by other students is not action by the state to create or increase the danger."); *Stevens v. Umsted*, 131 F.3d 697, 705–06 (7th Cir. 1997) (holding that a school superintendent's failure to remove students who sexually assaulted the disabled plaintiff, and his failure to place the plaintiff in a safer environment, nonetheless did not give rise to liability under the state-created danger doctrine); *Graham v. Indep. Sch. Dist. No. I-89*, 22 F.3d 991, 995 (10th Cir. 1994) (holding that school officials "did not create a hazardous situation by placing the aggressor and victim [students] in the same location ... [n]otwithstanding defendants' specific knowledge of the propensities of the aggressors").

[30] *Magee*, 675 F.3d at 865.

[31] *I.F. v. Lewisville Indep. Sch. Dist.*, 915 F.3d 360, 372 (5th Cir. 2019) (listing elements of a Title IX claim involving alleged student-on-student harassment).

Supreme Court's qualified-immunity doctrine "protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"[32] We are bound by our precedent, which has repeatedly declined to adopt the state-created danger doctrine. And a right never established cannot be one clearly established. As we recently put it, "A claim that we have expressly not recognized is the antithesis of a clearly established one."[33]

Controlling precedent requires us to REVERSE the district court and REMAND with instructions to enter judgment in Appellants' favor on M.F.'s § 1983 claim.

---

[32] *Pearson*, 555 U.S. at 231 (citation omitted).

[33] *Watts v. Northside Indep. Sch. Dist.*, 37 F.4th 1094, 1096 (5th Cir. 2022).

No. 21-20553

Jacques L. Wiener, Jr., *Circuit Judge*, concurring:

I concur in the well-written and well-reasoned opinion written by my colleague, Judge Willett, joined by Chief Judge Richman. Although we are bound by this court's precedent, I disagree with its refusal to join the nine other circuits that have adopted the state-created danger cause of action under 42 U.S.C. § 1983 to permit individuals to sue state actors for damages resulting from their acts or failures to act. I am convinced that it is well past time for this circuit to be dragged screaming into the 21st century by joining all of the other circuits that have now recognized the state-created danger cause of action. I acknowledge that we can only do so by taking this case en banc.

The extreme and uncontested facts of this case present an excellent opportunity for us to do so. As a senior judge, I could participate on the three-judge panel that heard and is deciding this case. And as a senior judge, I shall participate as a voting member of the en banc court if this case is re-heard en banc. But, as a senior judge, I cannot call for an en banc poll or even vote in such a poll if one is called for by an active judge of this court. I therefore write this dissent in the hope that one of my active colleagues will call for an en banc poll in an effort to have this circuit join the other nine that have previously recognized the state-created danger cause of action. The horrific facts of this case, as reported by Judge Willett in his majority opinion for this panel, present an ideal vehicle for this circuit's consideration of my proposal that we join the supermajority of other circuits that have unanimously recognized the state-created danger cause of action. If we do rehear this case en banc, the parties will have an ample opportunity to brief whether the facts alleged in the instant complaint state a plausible claim against school officials for student-on-student violence, and to distinguish the adverse authorities. I see this case as the perfect vehicle for our circuit to join every other circuit

No. 21-20553

that has recognized the state-created danger cause of action in § 1983 claims against state actors.  This is why I respectfully concur.