# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

July 14, 2023

Lyle W. Cayce
Clerk

No. 21-20553

Denise Fisher,

*Plaintiff—Appellee*,

*versus*

Jodi M. Moore; Amna Bilal; Rebecca Kaminski; James Brian Shillingburg; Michael Yelvington,

*Defendants—Appellants*.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:21-CV-937

ON PETITION FOR REHEARING EN BANC

Before Richman, *Chief Judge*, and Wiener and Willett, *Circuit Judges*.

Don R. Willett, *Circuit Judge*:

The petition for rehearing en banc is DENIED because, at the request of one of its members, the court was polled, and a majority did not vote in favor of rehearing (Fed. R. App. P. 35 and 5th Cir. R. 35). In the en banc poll, seven judges voted in favor of rehearing (Stewart, Elrod, Haynes, Graves, Higginson, Willett, and Douglas), and nine voted against

No. 21-20553

rehearing (Richman, Jones, Smith, Southwick, Ho, Duncan, Engelhardt, Oldham, and Wilson).

We withdraw our prior opinion, *Fisher v. Moore*, 62 F.4th 912 (5th Cir. 2023), and substitute the following in its place.

\*    \*    \*

A disabled public-school student was sexually assaulted by another student with known violent tendencies. Despite knowing of this attack, the victim's teachers let both her and her aggressor wander the school unsupervised, and she was again assaulted by the very same student. The victim's mother sued the school district under Title IX and various school officials under 42 U.S.C. § 1983. In her § 1983 claim against the school officials, she alleged liability under the so-called "state-created danger" doctrine, an exception to the general rule that government has no duty under the Due Process Clause to protect people from privately inflicted harms. The school officials sought dismissal of the § 1983 claim on qualified-immunity grounds, arguing that the state-created danger doctrine was not clearly established in this circuit when the underlying events occurred. The district court denied that motion and stayed proceedings on the Title IX claim pending this interlocutory appeal of the § 1983 ruling.

This circuit has never adopted a state-created danger exception to the sweeping "no duty to protect" rule. And a *never*-established right cannot be a *clearly* established one. As for whether to adopt the state-created danger theory of constitutional liability moving forward, we are reluctant to expand the concept of substantive due process for two reasons: (1) the Supreme Court's recent forceful pronouncements signaling unease with implied rights not deeply rooted in our Nation's history and tradition; and (2) the absence of rigorous panel briefing that grapples painstakingly with how such a cause of action would work in terms of its practical contours and application, vital

details on which our sister circuits disagree. Rather than break new ground, we rule instead on a narrower ground, one that follows our unbroken precedent.

We hasten to underscore this important point: Our holding today should not be misunderstood to say that the student—or any future plaintiff—lacks any federal redress whatsoever. To the contrary, Title IX provides a cause of action for "student-on-student harassment" under certain circumstances.[1] The plaintiff has asserted a Title IX claim in her complaint, and proceedings on that claim have been stayed pending this interlocutory appeal. We express no opinion on the merits of that claim, which the plaintiff can pursue on remand.

Accordingly, we REVERSE and REMAND with instructions to dismiss the § 1983 claim.

I

A

Denise Fisher, as next friend of M.F., a minor, alleged the following facts in her complaint:

M.F. was a student at James Bowie Middle School (JBMS) in the Fort Bend Independent School District (FBISD). Denise Fisher is her mother. Jodi Moore and Amna Bilal were M.F.'s teachers at JBMS. James Shillingburg and Michael Yelvington were the principal and vice principal, respectively. Rebecca Kaminski was the manager of FBISD's special-needs program.

---

[1] *I.F. v. Lewisville Indep. Sch. Dist.*, 915 F.3d 360, 368–72 (5th Cir. 2019) (listing elements of a Title IX claim involving alleged student-on-student harassment).

No. 21-20553

M.F. suffers from several mental and physical disabilities. When the relevant events occurred in the fall of 2019, M.F. was around thirteen years old but had the cognitive ability of a four- or five-year-old. Her conditions qualify her for services under the Individuals with Disabilities Education Act.[2] In accordance with IDEA, M.F.'s attendance at JBMS is governed by an Individualized Education Program (IEP). An IEP is a "comprehensive plan prepared by a child's . . . teachers, school officials, and the child's parents" and "the means by which special education and related services are 'tailored to the unique needs' of a particular child."[3] M.F.'s IEP noted that she sometimes "left her classroom without the teacher's permission" and therefore "need[ed] assistance transitioning throughout the school day." Accordingly, the IEP provided, among other things, that, "[f]or [M.F.'s] safety, escorting her during transitions within the school building will be required." In fact, M.F. was to be "escorted at all times in middle school."

R.R. is another minor student at JBMS. He had a history of severe behavior problems, including violence against other students and teachers, which was known to JBMS staff. Among his many infractions were "[h]itting students in the head with rocks"; "[p]oking a student in the eye"; "[h]itting other students with a belt"; "[t]hreatening to burn a teacher to death"; and "[b]iting," "[k]icking[,] and spitting on students." According to the complaint, JBMS administrators knew that R.R. posed an especially serious risk to female students, whom he frequently taunted with obscene remarks. Additionally, R.R. once told school staff that he "was going to be a rapist when he grows up." R.R.'s sexual misconduct was not limited to verbal abuse. He repeatedly entered the girls' restroom at school and on one

---

[2] *See* 20 U.S.C. § 1414(d).

[3] *Endrew F. ex rel. Joseph F. v. Douglas Cnty. Sch. Dist. RE-1*, 137 S. Ct. 988, 994 (2017) (citations omitted).

occasion, groped a female classmate. Another incident involved R.R. pulling his pants down to expose his genitals and then urinating on the wall. R.R. was also subject to an IEP requiring him to be escorted and supervised at all times—not for his safety, but for that of the other students.

On September 4, 2019, notwithstanding the IEP requirements, M.F. and R.R. were "both allowed to wander . . . out of their respective classes" without supervision. R.R. and M.F. "ended up in the boys' restroom, where R.R. forced M.F. to perform oral sex on him." School employees learned of the incident when they found R.R. and M.F. coming out of the bathroom and questioned both students about what they were doing there. M.F. conveyed to the staff members that she had been sexually assaulted. Upon investigating her claim, FBISD confirmed from the security camera footage that both R.R. and M.F. were in the boys' restroom at the time of the assault. As a result, the complaint alleges, FBISD and the other defendants were on notice that R.R. posed a specific threat to M.F.

Then it happened again.

On November 12, 2019, Jodi Moore and Amna Bilal once again "permitted M.F. to leave her classroom" and navigate the school hallways without supervision in violation of M.F.'s IEP. At the same time, "Moore and Bilal allowed R.R. to leave his classroom" and wander the hallways by himself in violation of his IEP. M.F. entered the girls' bathroom, and R.R. followed her inside. R.R. climbed under the stall M.F. was using and sexually assaulted her again. After an investigation, FBISD confirmed that R.R. had sexually assaulted M.F. in the girls' restroom. The Texas Education Agency also investigated the November 12, 2019 assault and determined that FBISD had violated both M.F.'s and R.R.'s IEPs.

No. 21-20553

B

In March 2021, Fisher filed suit on M.F.'s behalf in federal district court against FBISD and the individual school-official defendants, Jodi Moore, Amna Bilal, James Brian Shillingburg, Michael Yelvington, and Rebecca Kaminski. The complaint asserted (1) a claim against all defendants under 42 U.S.C. § 1983, on the theory that they had "created or increased the danger to M.F." and "acted with deliberate indifference" in violation of the Due Process Clause of the Fourteenth Amendment; and (2) a claim against FBISD under 20 U.S.C. § 1681, better known as Title IX.

Relevant to this appeal, the individual defendants moved to dismiss the § 1983 claim under Federal Rule of Civil Procedure 12(b)(6), contending they were entitled to qualified immunity. The district court denied the motion in a one-page order, stating only that "Defendants ha[d] not raised grounds sufficient to justify the partial dismissal requested." The individual defendants then filed this interlocutory appeal.

II

We review de novo this interlocutory appeal from the district court's denial of qualified immunity.[4] "On appeal from a motion to dismiss, this court accepts all well-pleaded facts as true and views them in the light most favorable to the plaintiff."[5]

III

Appellants insist they are entitled to qualified immunity because the state-created danger theory of liability was not clearly established in this

---

[4] *See Wilkerson v. Stalder*, 329 F.3d 431, 434 (5th Cir. 2003).

[5] *De La Paz v. Coy*, 786 F.3d 367, 371 (5th Cir. 2015).

6

circuit when the underlying events occurred. Bound by our precedent, we agree.

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"[6] "Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct."[7]

Appellants contend that as of November 2019, when the events took place, it was not clearly established that plaintiffs have a right to be free from state-created dangers. Appellants are correct.

The Due Process Clause of the Fourteenth Amendment provides that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law."[8] "The Due Process Clause . . . does not, as a general matter, require the government to protect its citizens from the acts of private actors."[9] We have recognized just one exception to this general rule: "when [a] 'special relationship' between the individual and the state imposes upon the state a constitutional duty to protect that individual from known threats of harm by private actors."[10] However, "a number of our sister circuits have

---

[6] *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

[7] *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (quoting *Harlow*, 457 U.S. at 818).

[8] U.S. Const. amend. XIV, § 1.

[9] *McKinney v. Irving Indep. Sch. Dist.*, 309 F.3d 308, 312 (5th Cir. 2002) (citing *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 195 (1989)).

[10] *Id.* at 313.

adopted a 'state-created danger' exception to the general rule, under which a state actor who knowingly places a citizen in danger may be accountable for the foreseeable injuries that result."[11] M.F. brings her due process claim against Appellants only under the second exception, the state-created danger theory.

The problem for M.F. is that "the Fifth Circuit has never recognized th[e] 'state-created-danger' exception."[12] In our published, and thus binding, caselaw, "[w]e have repeatedly declined to recognize the state-created danger doctrine."[13] For this reason, M.F. "ha[s] not demonstrated a clearly established substantive due process right on the facts [she] allege[s]."[14] The district court thus erred in denying qualified immunity to Appellants.

Even though we repeat today that the state-created danger doctrine is not clearly established in our circuit, we have not categorically *ruled out* the doctrine either; we have merely declined to adopt this particular theory of

---

[11] *Id.*

[12] *Keller v. Fleming*, 952 F.3d 216, 227 (5th Cir. 2020).

[13] *Joiner v. United States*, 955 F.3d 399, 407 (5th Cir. 2020); *see also, e.g.*, *Shumpert v. City of Tupelo*, 905 F.3d 310, 324 n.60 (5th Cir. 2018) ("[T]he theory of state-created danger is not clearly established law." (listing cases)); *Kovacic v. Villarreal*, 628 F.3d 209, 214 (5th Cir. 2010) ("The Fifth Circuit has not adopted the 'state-created danger' theory of liability."); *Bustos v. Martini Club Inc.*, 599 F.3d 458, 466 (5th Cir. 2010) ("But this circuit has not adopted the state-created danger theory."); *Rios v. City of Del Rio*, 444 F.3d 417, 422 (5th Cir. 2006) ("[N]either the Supreme Court nor this court has ever either adopted the state-created danger theory or sustained a recovery on the basis thereof."); *Beltran v. City of El Paso*, 367 F.3d 299, 307 (5th Cir. 2004) ("This court has consistently refused to recognize a 'state-created danger' theory of § 1983 liability even where the question of the theory's viability has been squarely presented.").

[14] *Keller*, 952 F.3d at 227.

No. 21-20553

constitutional liability.[15] To be sure, we have suggested what elements any such theory might include—should we ever adopt it, of course. For example, on one occasion, we indicated that a state-created danger theory would require "a plaintiff [to] show [1] the defendants used their authority to create a dangerous environment for the plaintiff and [2] that the defendants acted with deliberate indifference to the plight of the plaintiff."[16] We also stated that the defendant "'must have used their authority to create an opportunity that would not otherwise have existed for the third party's crime to occur.'"[17] Nonetheless, as we have held time and again, the right to be free from state-created danger is not clearly established in this circuit.[18]

We acknowledge that, as of November 2019, a majority of our sister circuits had adopted the state-created danger theory of liability in one form or another.[19] And, as M.F. points out, sometimes a "robust 'consensus of

---

[15] Some might reasonably contend, given our circuit's decade-plus of indecision—never adopting state-created danger yet never rejecting it—that if the theory is to be squarely engaged, its once-and-for-all adoption or rejection should come from the en banc court rather than a panel. That said, if a future three-judge panel *does* decide to take up the mantle of ending the equivocation, its decision to do so will certainly be made easier by meticulous briefing.

[16] *Doe ex rel. Magee v. Covington Cnty. Sch. Dist. ex rel. Keys*, 675 F.3d 849, 865 (5th Cir. 2012) (en banc) (quoting *Scanlan v. Tex. A&M Univ.*, 343 F.3d 533, 537–38 (5th Cir. 2003) (alterations in original)).

[17] *Id.* (quoting *Piotrowski v. City of Houston*, 237 F.3d 567, 585 (5th Cir. 2001)); *accord Estate of Lance v. Lewisville Indep. Sch. Dist.*, 743 F.3d 982, 1002 (5th Cir. 2014).

[18] *See, e.g.*, *Keller*, 952 F.3d at 227.

[19] *See Butera v. District of Columbia*, 235 F.3d 637, 651 (D.C. Cir. 2001); *Okin v. Vill. of Cornwall-On-Hudson Police Dep't*, 577 F.3d 415, 428 (2d Cir. 2009); *Kneipp v. Tedder*, 95 F.3d 1199, 1211 (3d Cir. 1996); *Doe v. Rosa*, 795 F.3d 429, 438–39 (4th Cir. 2015); *Kallstrom v. City of Columbus*, 136 F.3d 1055, 1066–67 (6th Cir. 1998); *King ex rel. King v. E. St. Louis Sch. Dist. 189*, 496 F.3d 812, 817 (7th Cir. 2007); *Carlton v. Cleburne Cnty.*, 93 F.3d 505, 508 (8th Cir. 1996); *Wood v. Ostrander*, 879 F.2d 583, 589–90 (9th Cir. 1989); *Uhlrig v. Harder*, 64 F.3d 567, 572 (10th Cir. 1995).

persuasive authority'" may suffice to clearly establish a constitutional right.[20] But even putting aside our binding precedent that the doctrine is not clearly established in our circuit, our cases foreclose this specific line of reasoning as well. As we have held, "the mere fact that a large number of courts had recognized the existence of a right to be free from state-created danger in some circumstances . . . is insufficient to clearly establish" the theory of liability in our circuit.[21] "We reasoned that, despite widespread acceptance of the [state-created danger] doctrine [in other circuits], the circuits were not unanimous in [the doctrine's] 'contours' or its application."[22] We therefore reject M.F.'s argument that out-of-circuit precedent clearly established her substantive due process right to be free from state-created danger.[23]

Finally, M.F. suggests that "[t]his is the case the Court has been waiting for," and she invites us to—finally—adopt the state-created danger theory of § 1983 liability. We are reluctant to do so.[24]

For starters, M.F. has not briefed the issue or explained how the doctrine would work in this case. She asserts only that her appeal "presents the right set of facts which, if believed, would trigger the application of the state-created danger theory." We think it "especially unwise" to fashion a new theory of constitutional liability without the benefit of rigorous

---

[20] *See Morgan v. Swanson*, 659 F.3d 359, 371–72 (5th Cir. 2011) (quoting *al-Kidd*, 563 U.S. at 742).

[21] *McClendon v. City of Columbia*, 305 F.3d 314, 330 (5th Cir. 2002).

[22] *Morrow v. Meachum*, 917 F.3d 870, 879 (5th Cir. 2019).

[23] *See McClendon*, 305 F.3d at 330.

[24] *See Pearson*, 555 U.S. at 236 (federal courts may choose which of the two prongs of qualified-immunity analysis to address first).

briefing.[25] We are particularly hesitant to expand the reach of substantive due process—not merely because we have "repeatedly" declined to do so on this exact issue,[26] but also because the Supreme Court has recently—and forcefully—underscored that substantive due process is a disfavored doctrine prone to judicial improvisation.[27] When adopting the state-created danger doctrine, our sister circuits tend to reason along the lines of (1) the Supreme Court left open the question in *DeShaney*,[28] and (2) other courts have adopted the doctrine.[29] More recently, however, the Court has reiterated—with gusto—that rights protected by substantive due process "must be 'deeply rooted in this Nation's history and tradition' and 'implicit in the concept of ordered liberty.'"[30] Without meticulous briefing on how state-created danger liability meets today's reinvigorated test, we leave the question of adopting the doctrine, and how narrowly to construe it, for another day.

---

[25] *Lookingbill v. Cockrell*, 293 F.3d 256, 263 (5th Cir. 2002).

[26] *Estate of Lance*, 743 F.3d at 1002 (listing cases).

[27] *E.g.*, *Dobbs v. Jackson Women's Health Org.*, 142 S. Ct. 2228, 2247–48 (2022) ("As the Court cautioned in *Glucksberg*, '[w]e must . . . exercise the utmost care whenever we are asked to break new ground in this field, lest the liberty protected by the Due Process Clause be subtly transformed into the policy preferences of [judges].'" (quoting *Washington v. Glucksberg*, 521 U.S. 702, 720 (1997))); *Collins v. City of Harker Heights*, 503 U.S. 115, 125 (1992) ("As a general matter, the Court has always been reluctant to expand the concept of substantive due process because guideposts for responsible decisionmaking in this unchart[ed] area are scarce and open-ended.").

[28] 489 U.S. 189 (1989).

[29] *E.g.*, *Irish v. Fowler*, 979 F.3d 65, 73–74 (1st Cir. 2020); *see also, e.g.*, *Kneipp*, 95 F.3d at 1205 ("In *DeShaney*, the Supreme Court left open the possibility" of a state-created danger claim, and "[s]everal of our sister courts of appeals have cited this comment by the Court as support for utilizing a state-created danger theory to establish a constitutional claim under 42 U.S.C. § 1983.").

[30] *Dobbs*, 142 S. Ct. at 2242 (quoting *Glucksberg*, 521 U.S. at 721).

No. 21-20553

Also, in light of some circuits' caselaw that imposes an exacting standard for state-created danger liability, it is not clear that the facts alleged here would state a plausible due process claim against school officials for student-on-student violence.[31] Ordinarily, we would expect a party encouraging us to adopt a new constitutional cause of action to convincingly distinguish adverse authorities.[32] Given these uncertainties and the parties' decision not to brief the subject, plus the Supreme Court's unsubtle admonition against enlarging substantive due process, we decline to adopt the state-created danger theory of constitutional liability in this case.

---

[31] *See, e.g., Morgan v. Town of Lexington*, 823 F.3d 737, 744 (1st Cir. 2016) ("An alleged failure of the school to be effective in stopping bullying by other students is not action by the state to create or increase the danger."); *Stevens v. Umsted*, 131 F.3d 697, 705–06 (7th Cir. 1997) (holding that a school superintendent's failure to remove students who sexually assaulted the disabled plaintiff, and his failure to place the plaintiff in a safer environment, nonetheless did not give rise to liability under the state-created danger doctrine); *Graham v. Indep. Sch. Dist. No. I-89*, 22 F.3d 991, 995 (10th Cir. 1994) (holding that school officials "did not create a hazardous situation by placing the aggressor and victim [students] in the same location . . . [n]otwithstanding defendants' specific knowledge of the propensities of the aggressors").

[32] We would also expect a plaintiff to discuss the contours of the doctrine she wishes us to adopt. In 2012, we vaguely sketched out what the elements might be, but we did not adopt the doctrine or firmly establish what a plaintiff would need to show to establish a government official's liability. *See Magee*, 675 F.3d at 865–66. The need for clear briefing is particularly important here, given the variation among our sister circuits in articulating and applying this somewhat nebulous doctrine. *See Butera*, 235 F.3d at 654 ("While all of these tests [from other circuits that have adopted the state-created danger doctrine] share the key element of State endangerment, namely, affirmative conduct by State actors, they are inconsistent in their elaborations of the concept." (internal citation omitted)); *compare, e.g., Sanford v. Stiles*, 456 F.3d 298, 304–05 (3d Cir. 2006) (four elements), *with, e.g., Estate of B.I.C.*, 710 F.3d at 1173–75 (six elements). Some circuits, for example, employ a "shocks the conscience" element. *E.g., Estate of B.I.C. v. Gillen*, 710 F.3d 1168, 1174 (10th Cir. 2013). Some do not. *See Kennedy v. City of Ridgefield*, 439 F.3d 1055, 1064–65 (9th Cir. 2006). And whereas most circuits require at least some showing of deliberate indifference, the Fourth Circuit appears to have rejected that rule. *See Turner v. Thomas*, 930 F.3d 640, 647 n.2 (4th Cir. 2019).

IV

The facts giving rise to this lawsuit are unquestionably horrific. And Title IX may well provide M.F. a remedy. But § 1983 does not, as the Supreme Court's qualified-immunity doctrine "protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"[33] Our precedent has repeatedly declined to adopt the state-created danger doctrine. And a right never established cannot be one clearly established. As we recently put it, "A claim that we have expressly not recognized is the antithesis of a clearly established one."[34]

Controlling precedent requires us to REVERSE the district court and REMAND with instructions to enter judgment in Appellants' favor on M.F.'s § 1983 claim.

---

[33] *Pearson*, 555 U.S. at 231 (citation omitted).

[34] *Watts v. Northside Indep. Sch. Dist.*, 37 F.4th 1094, 1096 (5th Cir. 2022).

No. 21-20553

Jacques L. Wiener, Jr., *Circuit Judge*, concurring:

I concur in the well-written and well-reasoned opinion written by my colleague, Judge Willett, joined by Chief Judge Richman. Although we are bound by this court's precedent, I disagree with its refusal to rehear this case en banc and join the ten other circuits that have now adopted the state-created danger cause of action under 42 U.S.C. § 1983, thereby permitting individuals to sue state actors for damages resulting from their acts or failures to act. It is well past time for this circuit to be dragged screaming into the 21st century by joining all those other circuits that have now unanimously recognized the state-created danger cause of action. I acknowledge that we could only do so by taking this case en banc, but we have yet again failed to do so.

The extreme and uncontested facts of this case presented an excellent opportunity for us to join those other circuits. As a senior judge, I could and did participate on the three-judge panel that heard and decided this case. And as a senior judge, I could have participated as a voting member of the en banc court if this case had been reheard en banc. But, as a senior judge, I could not call for an en banc poll or vote in the one that was called for by an active judge of this court. The horrific facts of this case, as reported by Judge Willett in his opinion for this panel, presented an ideal vehicle for this circuit's consideration of joining the ten other circuits that have unanimously recognized the state-created danger cause of action. If we had reheard this case en banc, the parties would have had the opportunity to brief and argue whether the facts alleged in the instant complaint state a plausible claim against school officials for student-on-student violence, and to distinguish the adverse authorities. I saw this case as the perfect vehicle for our circuit to rehear this case en banc and join the other ten circuits that have now recognized the state-created danger cause of action in § 1983 claims against state actors. This is why I respectfully concur

14

No. 21-20553

Stephen A. Higginson and Dana M. Douglas, *Circuit Judges*, joined by Stewart, Elrod, Haynes, and Graves, *Circuit Judges*,[1] dissenting from denial of rehearing en banc:

This case yet again squarely presents the question of whether a plaintiff may state a claim under 42 U.S.C. § 1983 where a state actor "created or knew of a dangerous situation and affirmatively placed the plaintiff in that situation." *Doe ex rel. Magee v. Covington Cnty. Sch. Dist. ex rel. Keys*, 675 F.3d 849, 864 (5th Cir. 2012) (en banc). For over a decade, our court has refused to answer. *Id.* at 865. To date, ten other circuits have recognized this "state-created danger doctrine." *Irish v. Fowler*, 979 F.3d 65, 73-75 (1st Cir. 2020) (adopting the doctrine and collecting cases from the Second, Third, Fourth, Sixth, Seventh, Eighth, Ninth, Tenth, and D.C. Circuits that reach the same result). Our indecision is a disservice to injured plaintiffs who are forced to litigate in endless uncertainty about their federal rights. And if this circuit is inclined to disagree with all others, then our delay is blocking percolation, which "allows a period of exploratory consideration and experimentation by lower courts before the Supreme Court ends the process with a nationally binding rule." *California v. Carney*, 471 U.S. 386, 400 n.11 (1985) (Stevens, J., dissenting) (citation omitted).

Litigants should continue asking this court to decide the state-created danger issue, confident that we will act as a "responsible agent[] in the process of development of national law." *Id.* Indeed, a future panel could assume this responsibility. *See Brecht v. Abrahamson*, 507 U.S. 619, 631 (1993) (explaining that an opinion is not binding precedent on an issue that was

---

[1] Judge Wiener was on the panel but, as a Senior Judge, he was not eligible to vote on whether to take this case en banc. *See Fisher v. Moore*, 62 F.4th 912, 919 (5th Cir. 2023) (Wiener, J., dissenting). Judge Wiener agrees that the case should have been taken en banc and agrees with this dissenting opinion.

No. 21-20553

"never squarely addressed").  Because our refusal to take on the mantle here only serves to perpetuate uncertainty, we respectfully dissent from the denial of rehearing en banc.